FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 26 PM 4: 53

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ODLAN HOLDINGS, L.L.C. | * | CIVIL ACTION NO. 00-0352 |
| | * | |
| VERSUS | * | SECTION "J" |
| | * | |
| CITY OF NEW ORLEANS | * | MAGISTRATE 4 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SUPPLEMENTAL BRIEF IN OPPOSITION TO COVERTED MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

On January 16, 2000, this Court converted the City of New Orleans' ("the City") *Motion to Dismiss*—which sought dismissal of the procedural due process claims raised by Odlan Holdings, L.L.C. ("Odlan") in this matter—into a *Motion for Summary Judgment*. The Court then gave Odlan ten (10) days in which to file any supplemental pleadings relative to that *Motion*. This *Supplemental Brief in Opposition to Converted Motion for Summary Judgment* is respectfully submitted on behalf of Odlan.

Fee_____
Process___
X Dktd____
___ CtRmDep___
___ Doc.No.___

**OVERVIEW**

The specific issue now before the Court is whether or not the City fulfilled its obligation to provide Odlan with procedural due process in considering Odlan's request for a Map Change. Fulfillment of this obligation required the City to provide Odlan with "notice plus an opportunity to be heard" on the merits of its requested Map Change. *Ortiz v. Fibreboard, Inc.*, 527 U.S. 815, 848 (1999). That fundamental requirement of procedural due process demands "notice reasonably calculated, under all the circumstances, to apprise" those affected of the pendency of the action. *Century Indemnity Corp. v. NGC Settlement Trust*, 208 F.3d 498, 510 (5th Cir. 2000). It further demands that the hearing itself provide a "meaningful opportunity" to the affected party to articulate the merits of its claims. *See, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Absent strict compliance with these requirements, the dictates of procedural due process are not met.

Substantial and genuine issues of material fact exist as to whether the City provided Odlan with those two indispensable components of due process. The City has never refuted the allegation by Odlan that the City failed to comply with the notice requirements necessary to comply with the due process requirement. *Compare, First Supplemental and Amending Complaint*

at ¶XXXVII with *Mansell v. Saunders*, 372 F.2d 573, 576 (5th Cir. 1967). That issue is particularly contested in light of the affidavit of James McNamara, attached hereto as Exhibit "A", which indicates that the City's failure to properly notify affected individuals of the precise Map Change actually discussed by the Planning Commission prevented proponents of the zoning change from appearing at the hearing. Furthermore, the City Council departed drastically from the hearing procedures generally employed in its meetings in a manner that prevented Odlan from obtaining a fair hearing of its appeal. *Compare, Id.* with *Grimm v. Cates*, 532 F.2d 1034 (5th Cir. 1976). These twin departures from the requirements of procedural due process create substantial issues of material fact as to whether or not the City adequately protected Odlan's rights to notice and a hearing of its Map Change.

In brief, the City has failed to demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). *Accord, Roberts v. Energy Dev. Corp.*, 2000 U.S.App.Lexis 31749 at *8 (5th Cir.). Consequently, the Court should deny the City's *Motion for Summary Judgment*.

## ARGUMENT

To prevail on its *Motion for Summary Judgment* requires the City to demonstrate that no factual dispute exists with respect

3

to its adherence to the requirements of procedural due process. Yet it has failed to negate all issues of fact either as to its giving of proper notice or its conduct of a fair hearing of the Map Change at issue. Consequently, summary judgment is inappropriate at this time.

### I. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER OR NOT THE CITY GAVE PROPER NOTICE OF THE HEARING.

The City puts the cart before the horse when it states that "once the CPC properly advertised and held a public hearing" on Odlan's request, neither it nor the City Council needed to hold another public hearing. *See, Memorandum in Support of Motion to Dismiss* at p. 4. That statement assumes that no issue of fact exists as to whether or not the City adhered to its guidelines, and the requirements of procedural due process, in giving notice of the hearing before the CPC. The facts of this case put that premise in material dispute.

Louisiana Revised Statute 37:4724 provides the means by which municipalities are to conduct public hearing relative to zoning:

> The legislative body of a municipality which has provided for a comprehensive zoning plan shall provide for the manner in which the regulations and restrictions and the boundaries of the districts shall be determined, established, and enforced and from time to time amended. No regulations or restrictions shall become effective until after a public hearing at which parties in interest have an opportunity to be heard. A public hearing in relation to the regulations may be held by the legislative body of a municipality which

4

has provided for a comprehensive zoning plan. In such a case, notice of the time and place of the hearing shall be published once a week in three different weeks in the official journal of the municipality or, if there be none, in a paper of general circulation therein; at least fifteen days shall elapse between the first publication and the date of the hearing.

La. R.S. 37:4724. Because New Orleans operates under a Home Rule Charter, it has the authority to promulgate its own standards and regulations relative to the conduct of land use within the City. *See generally, Times Picayune Pub. Corp. v. City of New Orleans,* No. 99-1685 (La.App. 4 Cir. 2/23/00); 760 So.2d 375, 377. Through use of this Home Rule power, the City has adopted notice requirements for hearing on zoning changes that call for more widespread publication of notice prior to any hearing on a zoning change:

> No application for a change in zoning classification, text amendment, Conditional Use, Exceptional Use, or Large-Scale Development (RPC Residential Planned Community, CBPC Central Business Planned Community), Special Permits and SC Shopping Center District shall be acted upon by the City Council until:
>
> * * *
>
> 2. Notice of the proposed change in zoning classification, text amendment, Conditional Use, Exceptional Use, electric transmission line facilities, or Large-Scale Development (RPC Residential Planned Community or CBPC Central Business Planned Community), Special Permits and SC Shopping Center District, and of the time and place of the hearing shall have been published once a week for three (3) consecutive weeks in the Official Journal of the City of New Orleans. At least 20 days shall lapse between the first publication and the date of hearing.

5

> 3. A printed notice in bold type shall have been posted for not less than twenty (20) consecutive days prior to the hearing before the City Planning Commission, on signs not less than one and one-half square feet in area, prepared, furnished and placed by the Department of Safety and Permits on each block on each street adjoining the area proposed for change in zoning classification, Conditional Use, Exceptional Use, or Large-Scale Development (RPC Residential Planned Community or CBPC Central Business Planned Community), Special Permits and SC Shopping Center District.  Said signs shall contain an accurate statement of the proposed change in zoning classification, Conditional Use, Exceptional Use or Large-Scale Development (RPC Residential Planned Community or CBPC Central Business Planned Community), SC Shopping Center District and Special Permits, and also the time and place of the public hearing.

New Orleans City Code Art. 15, §2.9.  These provisions insure that all affected persons in the City receive notice and an opportunity to present their opinion relative to any proposed zoning change.

Although a violation of the City's own rules concerning zoning notices would not *per se* give rise to a constitutional violation, it would give rise to a state law claim for violation of the state statute and would provide indicia of refusal to adhere to constitutional notice requirements.  *See, e.g., Smith v. Picayune*, 795 F.2d 482 (5th Cir. 1986).  Such a failure further raises a serious factual question as to whether the notice <u>actually provided</u> by the City conforms to the requirements of due process.  At bottom, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

6

afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. *Accord, Harris v. County of Riverside*, 904 F.2d 497, 503-504 (9th Cir. 1990)(zoning ordinance invalidated because it failed to properly advise interested parties of hearing). Notice that fails to convey the necessary information to the interested parties fails to satisfy the requirements of due process.

Since *Mullane*, courts have recognized that procedural due process extends a right to notice not simply to the immediate interested parties, but also to all individuals within the zone of parties "affected" by a specific governmental action. Zoning regulations and land use actions necessarily affect all members of the neighborhood and thus require notice reasonably calculated to all such individuals. *Compare, Environmental Coalition of Broward Cty., Inc. v. Myers*, 831 F.2d 984 (11th Cir. 1987); *Minnich v. Gargano*, 2001 U.S.Dist.Lexis. 372 (S.D.N.Y.). *See also, Small Engine Shop v. Cascio,* 878 F.2d 883, 887-888 (5th Cir. 1989). Members of the community must receive notice that permits them to appear at the hearing and voice their views on the proposed action. This insures that the City will obtain the most representative cross-section of opinion in making its ultimate determination. The provisions in the state and city statutes governing notice for a zoning hearing in New Orleans reflect a finding that the interested parties in a zoning

7

situation are those property owners immediately surrounding the property at issue. Notice reasonably calculated to apprise these individuals of the pendency of a hearing is necessary to fulfill due process.

Furthermore, the notice sent to the affected individuals must be accurate as to the matter under consideration. It is well settled that the type of procedure afforded a particular issue varies directly with "the risk of an erroneous deprivation of such interest through the procedures used." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Where a municipality has created certain notice provisions in order to comply with due process, and then the notice provided by those provisions is factually inaccurate, the risk of error exponentially increases. "Adequate notice is integral to the due process right to a fair hearing, for the right to be heard has little reality or worth unless one is informed." *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997). Such notice must be "such as one desirous of actually informing the interested parties might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. *See also, Brock v. Roadway Express, Inc.*, 481 U.S. 252, 265-265 (1987); *Taylor v. Rodriguez*, 2001 U.S.App.Lexis 668 (2nd Cir.)(a "hearing is not 'meaningful' if a prisoner is given inadequate information about the basis of the charges against him. A prisoner should not, as Taylor was, have to guess what conduct forms the basis

for the charges against him"); *Gilbert v. Sullivan*, 1995 U.S.App.Lexis 4373 (1st Cir.); *Salcido v. Woodbury Cty.*, 119 F.Supp.2d 900 (N.D.Iowa). Notice that affirmatively misstates the inquiry at the proposed hearing falls short of fulfilling this due process requirement.

As attached Exhibit "A" demonstrates, a substantial issue exists as to whether or not such notice was given in the instant case. The City's zoning regulations require the posting of notice within the block surrounding the affected property. This permits the surrounding property owners to know of the property subject to the change, the type of change proposed and the time and place where the City agencies will consider the proposal. Yet the Affiant in Exhibit "A" failed to discern any property signs of this type in and around 2800 St. Charles Avenue. As indicated by attached Exhibit "B"—the information sheet used by the City to track zoning proposals as they go through the system—the City apparently failed to post the signs within the affected area as required by statute.

Furthermore, and most essentially, the City inaccurately described the type of zoning restriction it would consider at the initial CPC meeting. Attached Exhibit "C" *in globo* represents the notices published by the City in the Times-Picayune. Each notice simply states that the City will consider a requested Map Change from an RM-1 (multi-family residential)

9

classification to a B1-A classification (general business). The CPC Staff Report unilaterally included the RO-1 (residential office district) classification in its suggested changes and the Planning Commission failed to amend its notices prior to the original meeting. *See,* Attached Exhibit "D." As a consequence, many individuals appeared that opposed the re-classification of the property to a full business location, yet all of those individuals who might have wanted a lower-impact RO-1 classification were not given notice and an opportunity to voice their opinions. The attached letter from Lloyd Shields—the attorney representing the Garden District Association at the time of the CPC hearing—underscores that considering the Map Change based on the notice published "would be acting contrary to constitutional due process considerations." *See,* Attached Exhibit "E." These documents create a clear and unimpeachable dichotomy between the requirements of due process and the actions actually taken by the City in the instant matter.

While arguing that it did not need to go beyond what it did if it properly advertised the initial public hearing on Odlan's Map Change, the City never establishes that it did so advertise the meeting. The attached exhibits seriously undermine any such contention. In light of these disputes, summary judgment is singularly inappropriate on this count.

## II. THE CITY FAILED TO PROVIDE A FAIR HEARING OF THE DISPUTES.

Exacerbating the lack of notice given to the public of the proposed Map Change was the wholly inadequate hearing given the appeal of CPC's decision before the City Council.[1] Genuine issues of material fact exist as to whether the hearing before the Council was fair and whether the Council adhered to the longstanding procedures set forth for hearing such appeals. The presence of these facts precludes the issuance of summary judgment at this time.

Underlying the need for adherence to well-established and relied-upon principles is the fundamental constitutional rule that requires a "fair hearing" for proceedings affecting property interests. *Bell v. Burson*, 402 U.S. 535, 542 (1971)(due process requires "notice and opportunity for hearing appropriate to the nature of the case"); *Altman v. City of Chicago*, 2000 U.S.Dist.Lexis 16632 at *9 (N.D.Ill.); *Henrietta D. v. Giuliani*, 119 F.Supp.2d 181, 215 (S.D.N.Y. 2000). This fair hearing component includes the requirement that "affected owners of individual parcels may be entitled to personal notice and a due process hearing, including an impartial decision maker and

---

[1] Although the City argues that it did not need to have a public hearing before the Council where it properly convened a meeting before the Planning Commission, that statement presumes that the Planning Commission meeting was properly advertised and convened. As demonstrated in Section (I), *supra*, the parties seriously dispute the propriety of that advertisement. Consequently,

11

particularized findings of fact." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1218 (6th Cir. 1992). Failure of such process equates with a failure of procedural due process.

Furthermore, where a specific municipal agency acts in accordance with a relied-upon practice or procedure, departure from that practice can itself constitute a denial of due process:

> There persists in controlling decisions of the Supreme Court recognition that significant departures from stated procedures of government and even from isolated assurances by governmental officers which have induced reasonable and detrimental reliance may, if sufficiently unfair and prejudicial, constitute procedural due process violations.

*Jones v. Bd. of Governors of U.N.C.*, 704 F.2d 713, 717 (4th Cir. 1983)(citing *United States v. Caceres*, 440 U.S. 741, 752-53 & n.15 (1979)). *Accord, Goodreau v. Rector*, 116 F.Supp.2d 694, 705 (W.D.Va. 2000); *Everett v. City of Tallahassee*, 840 F.Supp. 1528, 1540-41 (N.D.Fla. 1992). Once a municipal agency departs from that well-established practice in a specific case, that agency violates the procedural due process rights of those who relied on that procedure. Just such an instance occurred in the instant matter.

At the outset, a substantial issue of material fact exists as to whether an impartial body reviewed the decision of the City Planning Commission to deny the Map Change. All that the

---

it now appears that Odlan <u>never</u> had its requested Map Change considered in a

record of the City Council meeting indicates is that the proponents of the Map Change—represented by James McNamara—presented the affirmative arguments in favor of the Change. Mr. McNamara pointed out the compliance of the Map Change with the criteria set forth in the City Planning Commission guidelines for granting such changes. He further demonstrated that the Map Change complied with the specific policies of the City of New Orleans in cultivating and encouraging commercial development of property like that at 2800 St. Charles Avenue. Mr. McNamara finally pointed to the Preliminary Staff Report of the CPC recommending adoption of a Map Change to an RO-1 residential office district) classification. The earlier public hearing before the City Planning Commission and the decision from which Odlan appealed to the City Council centered on the Map change to a B-1A (general business) classification.

Consequently, all that the City Council heard concerning the proposed Map Change were the arguments in favor of a B-1A Map Change. That it failed to consider the opposing arguments is not a sign of the merits of the proposed Map Change but rather indicia of the sentiment of the Council. In a proceeding like the instant request for a Map Change, one that affects individual property and has an impact on a specific landowner, judgments should be made on the basis of the record before the

---

properly noticed and convened forum.

body adjudicating the request. All that the City Council had before it in the instant case were the comments favoring the adoption of the proposal and the evidence in support of that proposal. That it would reject the proposal on these grounds indicates a predisposition, and a deviation from the record, that indicates something other than a hearing consistent with Odlan's rights to procedural due process.

Furthermore, if the Council did in fact consider the opposition of the Garden District Association in rendering its decision, it should have given Odlan an opportunity to rebut that opposition at the hearing. It did not. Longstanding precedent at the City Council holds that the party requesting a zoning change gets ten (10) minutes to discuss the proposal and additional proponents three (3) minutes, opponents get three (3) minutes apiece, and then the proponent gets a final five (5) minutes in rebuttal. *See,* Attached Exhibit "A." The opportunity for rebuttal means that the affirmative presentations confine themselves to a presentation of the arguments in favor of the proposal without direct challenge to the arguments of the opponents. *Id.* Mr. McNamara made his presentation before the Council based on this longstanding precedent and thus saved much of his argument in opposition to the Garden District Association complaints for rebuttal.

What the Council then did was to deprive Odlan of the opportunity to present any rebuttal. The opponents of the Map Change waived their right to oral argument at the City Council meeting. Not only did this prevent the argument in opposition from being made part of the record, but also it further prevented Odlan from presenting evidence in rebuttal of those arguments. As Attached Exhibit "A" demonstrates, Odlan relied on this longstanding custom in making its presentation. The City Council, however, departed from this custom in a manner that severely curtailed Odlan's ability to be completely heard.

In short, contrary to the allegations of the City, the City Council's failure to hear evidence in opposition to the Map Change itself constitutes a deprivation of Odlan's rights to due process. This failure prevented the taking of full and complete evidence that would have demonstrated the impartiality of the City Council. It further precluded Odlan from directly challenging whatever opposition to the Map Change may have existed. By failing to provide Odlan with a fair hearing, the City Council exacerbated the prejudice caused by the failure of the Planning Commission to properly advertise the public hearing it held on the Map Change. These issues prevent the City from carrying its burden of demonstrating the existence of no genuine issues of material fact as to its fulfillment of its procedural

due process obligations. Therefore, summary judgment is inappropriate in this matter.

## CONCLUSION

For the foregoing reasons, and for those in its original opposition memorandum, Odlan respectfully moves this Court to deny the City's *Motion for Summary Judgment*.

Respectfully submitted,

**TAGGART, MORTON, OGDEN, STAUB
ROUGELOT & O'BRIEN, LLC**


By: *Michael W. Hill*
Charlton B. Ogden III, Bar No.10169
James R. Morton, Bar No. 9755
Michael W. Hill, Bar No. 25415
2100 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 599-8500

-and-

**THE ECKSTEIN LAW FIRM**

Michael L. Eckstein, Bar No.5268
David C. Raphael, Jr., Bar No. 22853
1515 Poydras Street, Suite 2195
New Orleans, Louisiana 70112
Telephone: (504) 527-0701

**Attorneys for:
ODLAN HOLDINGS, L.L.C.**

## CERTIFICATE OF SERVICE

Undersigned counsel does hereby certify that he has served a copy of the foregoing pleading on opposing counsel this 26th day of January, 2001, by faxing and/or placing same in the United States mail, postage prepaid and properly addressed.

_____
Michael W. Hill

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**