

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

MAR 16 2001      2001 MAR 16 PM 1:22

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ODLAN HOLDINGS, L.L.C. | * | CIVIL ACTION NO. 00-0352 |
| | * | |
| VERSUS | * | SECTION "J" |
| | * | |
| CITY OF NEW ORLEANS | * | MAGISTRATE 4 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MOTION TO RECONSIDER PURSUANT TO F.R.C.P. 60

**NOW INTO COURT,** through undersigned counsel, comes Odlan Holdings, L.L.C., which respectfully suggests to this Court that its previous failure to file an opposition memorandum to the Garden District Association's *Motion to Dismiss* was due to excusable neglect permitting relief from that judgment. Furthermore, the lack of substantive merit in the motion filed by the Garden District Aassociation merits reversal of the Order granting that motion.

**WHEREFORE,** Odlan Holdings, L.L.C. respectfully moves this Court to reconsider its decision granting the Garden District Association's *Motion to Dismiss* and to deny that motion on the merits.

Respectfully submitted,

**TAGGART, MORTON, OGDEN, STAUB
ROUGELOT & O'BRIEN, LLC**

By:_____
Charlton B. Ogden III, Bar No.10169
James R. Morton, Bar No. 9755
Michael W. Hill, Bar No. 25415
2100 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 599-8500

            -and-

**THE ECKSTEIN LAW FIRM**

Michael L. Eckstein, Bar No.5268
David C. Raphael, Jr., Bar No. 22853
1515 Poydras Street, Suite 2195
New Orleans, Louisiana 70112
Telephone: (504) 527-0701

**Attorneys for:
ODLAN HOLDINGS, L.L.C.**

## CERTIFICATE OF SERVICE

Undersigned counsel does hereby certify that he has served a copy of the foregoing pleading on opposing counsel this 16th day of March, 2001, by faxing and/or placing same in the United States mail, postage prepaid and properly addressed.

_____
        Charlton B. Ogden III

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ODLAN HOLDINGS, L.L.C. | * | CIVIL ACTION NO. 00-0352 |
| | * | |
| VERSUS | * | SECTION "J" |
| | * | |
| CITY OF NEW ORLEANS | * | MAGISTRATE 4 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF
## MOTION TO RECONSIDER PURSUANT TO F.R.C.P. 60

**MAY IT PLEASE THE COURT:**

This *Memorandum in Support of Motion to Reconsider* is respectfully submitted on behalf of Odlan Holdings, L.L.C.

### STATEMENT OF THE CASE

This matter arises out the attempt of Odlan Holdings, L.L.C. ("hereinafter sometimes referred to as "Odlan") to obtain a zoning variance in the Garden District for property it owns at 2800 St. Charles Avenue. The facts of the matter have been briefed in response to two (2) *Motions to Dismiss* filed by the City of New Orleans (hereinafter sometimes referred to as the "City"). The Garden District Association (hereinafter sometimes referred to as the "GDA") added as a defendant in this matter,

3

has moved to dismiss all claims of racial discrimination brought against it. Through a failure of a paralegal from the firm of Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, LLC (hereinafter sometimes referred to as "Taggart Morton") to bring the *Motion to Dismiss* to the undersigned's attention at the time it was served by the GDA, Odlan failed to file an opposition to said *Motion* within the time permitted, causing this Court ultimately to grant that *Motion* as unopposed. Odlan now brings this *Motion* asking for reconsideration of that dismissal.

Renaldo Turnbull, an African-American, owns and manages Odlan. *See, First Supplemental and Amending Complaint* at ¶V. Odlan acquired 2800 St. Charles Avenue and attempted to convert this former florist shop into a coffee shop. *Id.* at ¶VII, XVI. Odlan foresaw few neighborhood problems associated with this venture because of the prior commercial nature of the building and the existence of numerous retail shops around the property. *Id.* at ¶IX-XI. Odlan's preliminary conversations with nearby Garden District residents reinforced its belief that the proposed venture would meet with little or no opposition. Subsequent research revealed, however, that other commercial enterprises in the Garden District were owned by non-minority individuals against whom no neighborhood opposition had been lodged. *Id.* at ¶XII.

4

On or about October 4, 1999, Odlan filed a petition with the New Orleans City Planning Commission (hereinafter sometimes referred to as the "CPC") as a prerequisite to the opening of a coffee shop and linen shop at the location. *Id.* at ¶XVI. That Petition asked that the City grant a Map Change to Odlan from an RM-2A Multiple Family Residential District to either a B-1A Neighborhood Business District or an RO-1 General Office District. *Id.* Odlan attempted to correct all concerns voiced to any such developments by those living near the property at the time of the application. *Id.* at ¶XVI(b). Odlan further fulfilled each and every criteria used by the City in determining whether or not to grant such a request for map change. *Id.* at ¶XVII-XXI. This should have induced acceptance of the project by the City Planning Commission and the City Council.

Indeed, the CPC Preliminary Staff Report openly advocated the granting of a map change that would have permitted the coffee shop and linen shop to open. *Id.* at ¶XXII. Yet the GDA stepped in, vehemently opposed the recommendation of the CPC Preliminary Staff Report, and led the CPC and the City Council to reject the Map Change without any legitimate reason and with insufficient notice and hearing of the meetings that considered the map change.

The absence of minority-owned businesses and the abundance of non-minority owned businesses in the immediate vicinity of the Odlan property, together with the fact that the GDA had interposed no objection to numerous previous zoning applications made by non-minority businesses seeking to increase the intensity of their commercial activity in the area, gave Odlan a strong suspicion that race had played a significant factor in the GDA's opposition to its map change request and, ultimately, in the City's denial of that request. It thus commenced this action for deprivation of civil rights—equal protection, procedural and substantive due process--against the City. This Court dismissed certain of Odlan's claims against the City but left intact the procedural due process claim. By amendment, Odlan added the GDA as a defendant and provided further factual allegations in support of its equal protection, substantive due process and Civil Rights Act claims. The GDA answered the amended complaint, then filed a *Motion to Dismiss* the suit on January 23, 2001.

The GDA noticed that motion for hearing on February 14, 2001. It served the motion by regular mail on all parties January 23, 2001. Counsel for Odlan were divided into two firms—the Eckstein Law Firm, which had represented Odlan before the City Council and CPC and which filed the initial complaint in these proceedings, and Taggart Morton, which was retained and

6

enrolled as trial counsel. The GDA's motion came to Taggart Morton's offices, was opened and placed in a stack of papers by a Taggart Morton's paralegal at the undersigned's office. The hearing date was calendared by co-counsel for plaintiff at the Eckstein Firm, but was not designated for further action or response prior to the date of the hearing, February 14, 2001, due to the fact that the Eckstein Firm was not directly engaged as trial counsel in this matter.

On the date of the hearing, a reminder popped up on Michael Eckstein's computer indicating that some form of hearing was set in federal court in the *Odlan* matter.   David Raphael of the Eckstein Firm immediately contacted Michael Hill of Taggart Morton to determine whether any oral arguments had been set for hearing that day.   Mr. Hill then called the federal court and spoke with the docket clerk of this division.   Both the docket clerk and Mr. Hill misconstrued the subject motion to dismiss to be the prior motion filed by the City which had been taken under submission by this Court on the briefs.   Mr. Hill thus informed both the undersigned of his firm and the attorneys at the Eckstein firm that the reminder was a miscommunication and that no hearing was actually set.

Counsel was thus surprised to receive the Order of this Court, issued on February 15, 2001, dismissing the action against the GDA pursuant to its *Motion to Dismiss*.   Odlan now

7

moves this Court, pursuant to the provisions of its Order granting permission to apply for reconsideration thereof, to vacate the Order and deny the GDA's *Motion to Dismiss*.

### ARGUMENT FOR RECONSIDERATION

Undersigned counsel sincerely and profusely apologizes for the confusion that precluded the filing of a timely brief in opposition to the GDA's *Motion to Dismiss*. Whether or not the Court vacates that Order and considers the merits of the motion requires a weighing of "the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). The interests in preserving the finality of the underlying Order—being some four weeks old, with no showing that any reasonable reliance has been placed on it—are in this case outweighed by the substantial rights of Odlan sought to be vindicated through this action. Consequently, Odlan respectfully suggests that equity in this case militates in favor of vacating the February 15, 2001 order of dismissal.

This Court has virtually unfettered discretion to determine whether or not to grant a motion to reconsider. "In determining whether the moving party has established 'excusable neglect' under Rule 60(b)(1) or manifest injustice under Rule 60(b)(6), the district court enjoys considerable discretion." *Lavespere*

v. *Niagara Machine Tool Works*, 910 F.2d 167, 173 (5th Cir. 1990).
Although *Lavespere* and other Fifth Circuit cases have held that
simple attorney neglect is insufficient to permit relief under
the rule, *see id.*, those cases generally focus on the extent to
which an attorney <u>knew</u> of a deadline and simply ignored it.
Indeed, Fifth Circuit precedent does provide that "federal
district courts do make available these remedies in order to
correct obvious error or to achieve substantial justice where an
attorney's neglect may unduly prejudice the rights of a party."
*Branch-Hines v. Hebert,* 939 F.2d 1311, 1314 n. 4 (5th Cir. 1991).
*See also, Woodham v. American Cystoscope*, 335 F.2d 551, 557 (5th
Cir. 1964).    Indeed, in a similar situation in which the
plaintiff failed to file an opposition because of confusion
surrounding the departure of an attorney from his firm, Judge
Sear found that confusion sufficient grounds to excuse the
failure to file an opposition.  *See, Albright v. City of New
Orleans,* 1997 U.S. Dist. Lexis 7385 at *6-7 (E.D.La.)(Sear
J.)("Because the merits of the motions were not addressed and I
find the confusion caused by Newman's resignation to be
excusable neglect, plaintiffs' motion for reconsideration is
granted.")  Similar indulgence should greet the instant matter.

In this matter, trial counsel simply had no knowledge
whatsoever and therefore failed to take cognizance of the
pendency of the motion until the date of the hearing, when

contacted by the Eckstein Law Firm triggered some suspicion on its part.  They could not find the originals of the motion and thus did not know what the source of the reminder was.    To confirm or dispel their suspicion, they then called the docket clerk and attempted to find out whether or not a hearing had been scheduled. Confusion as to which motion to dismiss was being heard, however, led trial counsel into the false comfort that no hearing on a motion to dismiss had been scheduled on the day in question.   Counsel have actively litigated this case, they have ultimate respect for the rules of this Court and they have previously met all deadlines of this Court.   Their failure to respond to the instant motion is therefore an example of excusable neglect borne of attorney confusion. Certainly had trial counsel been cognizant of the subject motion, a timely opposition brief would have been filed on Odlan's behalf objecting the merits of GDA's *Motion to Dismiss*, and would have appeared at the hearing on the motion scheduled February 14, 2001.

Given these facts, the balance of equity shifts towards considering the underlying motion on the merits.   No true finality has attached to the Court's Order—the appellate delays have not run and it is therefore still subject to reconsideration on the merits without substantial prejudice to any of the parties.   No trial date has been set and thus no

10

party can say that they have foregone any discovery or trial preparation on the strength of the motion. No further reasonable reliance can be placed on the Order itself. Weighed against this are very serious and cognizable civil rights actions of Odlan—actions of the same type present in the *Albright* matter—that seek to vindicate constitutional and statutory guarantees of equal protection and due process.

**ARGUMENT ON THE MERITS**

### I.    ALLEGATIONS OF RACIAL CONSPIRACY FALL OUTSIDE THE SCOPE OF THE *NOERR-PENNINGTON DOCTRINE.*

What the GDA essentially asks this Court is to hold that alleged bigotry, so long as it is practiced through words directed to public officials, is a protected activity that can never give rise to a cause of action for damages. Its invocation of the *Noerr-Pennington* doctrine in support of this argument is untenable, as the conduct at issue in the instant matter falls within the exception that imposes liability for conduct that is otherwise illegal or unethical, a category into which racially discriminatory conduct clearly fits. As a result, the *Motion to Dismiss* should fail on the merits.

The *Noerr-Pennington* doctrine began as an anti-trust doctrine designed to shield certain lobbying efforts from prosecution under the *Sherman Act*. Yet, inasmuch as "conduct which is not exempt from the antitrust laws may nevertheless be

perfectly legal," it is also true that conduct not violative of the anti-trust acts may nevertheless violate other laws. *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 n. 5 (1979). That doctrine thus has limited applicability in other contexts. Furthermore, within the *Noerr-Pennington* doctrine exists the exception holding that "the solicitation of governmental action may be unprotected when the litigant's 'sole purpose' or 'principal purpose' for making the solicitation is the commission of a wrongful act." *P & B Marina, Inc. v. Logrande*, 135 F.R.D. 50, 53 (E.D.N.Y. 1991). The combination of the limited applicability of the *Noerr-Pennington* doctrine, and the overlapping exceptions intrinsic to that doctrine, preclude its applicability herein.

*Bayou Fleet v. Alexander*, 234 F.3d 852 (5th Cir. 2000), cited by the GDA as a reason for dismissing this matter, actually underscores the reason why dismissal at this stage is inappropriate. *Bayou Fleet* explicitly followed the prior Supreme Court decision in *Omni Outdoor Advertising* that held conduct to fall outside *Noerr-Pennington* protection where "the conspiracy 'reaches beyond mere anticompetitive motivation.'" *Id.* at 861 n. 9 (citing *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 383 (1991)). This recognition by the *Bayou Fleet* court underscores the apoditic aphorism, mentioned above, to the effect that conduct perfectly

12

permissible under the anti-trust laws may nevertheless be improper and illegal under other laws. Where conduct would be illegal under ordinary circumstances, the conduct does not automatically acquire a patina of legality simply because the actor enlisted governmental aid in facilitating the illegal conduct.

Such a principle is at the heart of the exception to the *Noerr-Pennington* doctrine for "illegal or unethical conduct" noted in *Bayou Fleet*. Courts have consistently recognized that governmental involvement in a scheme to obtain an illegal end does not legalize that end. *Logrande*, 135 F.R.D. at 53. *See also, Coastal States Marketing v. Hunt,* 694 F.2d 1358, 1372 (5th Cir. 1983)(withholding immunity where "primary purpose" of petition was fulfillment of wrongful goal). The "illegality" or unethical nature of the ultimate goal need not imply any form of venal corruption on either the part of the petitioner or of the governmental official. "The second exception covers more than 'corruption' in a venal sense. '[I]illegal, corrupt or unethical means' are excepted. Activity which might not be considered corrupt in a monetary sense may nevertheless be illegal or unethical." *Fox Network, L.L.C. v. Time Warner Inc.,* 962 F.Supp 339, 345-346 (E.D.N.Y. 1997). This principle encompasses both a means and an end analysis—illegal ends, or legal ends sought

through illegal means, cannot cloak themselves within the protection of the *Noerr-Pennington* doctrine.

The allegations of the instant *First Supplemental and Amending Complaint* fit within the exception to the *Noerr-Pennington* doctrine, as they encompass allegations of racial discrimination prohibited by the *Civil Rights Act* and applicable Louisiana human rights laws. Odlan essentially alleges that the GDA sought to prevent him from opening a legitimate business in the Garden District because he was black. It goes without saying that such an attempt, when attempted through private means, is patently illegal. The *Civil Rights Act of 1991* holds that "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," defined as the ability to stand on an equal footing in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. §1981(b).  The Act further requires that all persons "shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. §1982.  Courts too numerous to mention have held that the combination of these two statutory provisions prohibit individuals from creating undue burdens on the rights

14

of African-Americans to own property simply because of their race. *See, e.g., Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237-238 (1969); *Jones v. Mayer Co.*, 392 U.S. 409 (1968). It is too obvious to require stating that a party cannot legally prevent an African-American from purchasing a building previously housing a commercial establishment and to re-establish a commercial business therein simply because of the buyer's racial status.

That a private property owner might resort to governmental action to aid in depriving the seller of his or her civil rights does not wash away the illegality of the private actor's conduct. *Shelley v. Kraemer*, 339 U.S. 1 (1948), and its progeny have all held that a party plaintiff may not accomplish a racially discriminatory end through invocation of the judicial process. *Id.* at 29. Further cases have held that a coalition between governmental and private actors in furtherance of a constitutionally impermissible end are themselves violations of the *Civil Right Act*. "A private defendant's joint participation with a state official in a conspiracy to deprive another of constitutionally protected rights constitutes both state action essential to show a direct violation of a plaintiff's rights and action 'under color of state law' for purposes of § 1983." *Piazza v. Major League Baseball, Inc.*, 831 F.Supp. 420, 426 (E.D.Pa. 1993). *Accord, West v. Atkins*, 487 U.S. 42, 47 (1988);

*Lugar v. Edmonson Oil, Inc.*, 457 U.S. 922, 931-932 (1982). Thus, far from exonerating a defendant of participating in illegal conduct, a conspiracy between a governmental actor and a private actor to violate the civil rights of a minority citizen actually inculpates both in civil rights violations.

In short, the *Noerr-Pennington* doctrine has limited applicability to a situation in which a conspiracy exists between the government and a private individual to deprive another individual of his or her civil rights. The doctrine clearly excepts from its protections those instances in which the end sought through governmental petition is itself illegal. Preventing an individual from owning or developing property because of that person's race falls within this realm of excepted illegal conduct. Therefore, to the extent that Odlan alleges that the GDA conspired with the City to prevent it from obtaining a zoning variance because of his race, he makes allegations not subject to the *Noerr-Pennington* doctrine.

## II. ODLAN HAS ALLEGED A CAUSE OF ACTION THAT FALLS OUTSIDE OF THE *NOERR-PENNINGTON DOCTRINE*.

In its second argument, the GDA essentially argues that—to the extent that Odlan states a cause of action falling outside the *Noerr-Pennington* doctrine—it has still failed to allege a sufficient action against the GDA under the *Civil Rights Act*.[1]

---

[1] Interestingly, the GDA has not stated that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

16

This argument overlaps with the *Noerr-Pennington* argument in that it challenges the sufficiency of the *First Supplemental and Amending Complaint* to state a legally cognizable cause of action. It is nevertheless clear that Odlan's *First Supplemental and Amending Complaint* does state a valid cause of action under the *Civil Rights Act* that falls outside the *Noerr-Pennington* defense.

   1. Odlan has alleged violations of the *Civil Rights Act* under *42 U.S.C. §1981, 1983* and *1985*. These *Civil Rights Act* statutes cover both public and private discrimination and prohibit both. "The Civil Rights Act was intended to protect and defend and give remedies for their wrongs to all the people and thus is to be liberally and beneficently construed." *Ngiraingas v. Sanchez*, 495 U.S. 182, 197 (1990). *42 U.S.C.*

entitle him to relief." *Mahone v. Addicks Utility Dist. of Harris Cty.*, 836 F.2d 921, 926-927 (5th Cir. 1988). *Accord, Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). It has thus failed to meet the exacting criteria necessary to require the granting of its motion. The GDA has simply stated that the allegedly conclusory allegations of the *First Supplemental and Amending Complaint* have not stated such a claim. Yet such an argument is the office of a motion for more definite factual statement and not a motion to dismiss. *See, e.g., Bell v. Milwaukee*, 494 F.Supp. 1339, 1344 (E.D. Wis. 1980) ("(W)here a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case for failure to set out evidential facts can seldom be justified.") As a notice pleading regime, the federal system cannot countenance dismissal of pleadings making all necessary allegations so long as the allegations place the defendant on notice of the claims against it. *Alsalas v. Dominick's Finer Foods, Inc.*, 2000 U.S. App. LEXIS 30183 at *7 (7th Cir.) ("Under our notice pleading system, a plaintiff may avoid dismissal by "alleging without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment.") Odlan has alleged all facts necessary to support a civil rights action against the GDA, the GDA has not indicated that Odlan could never prevail under any set of

*§1983* focuses on discrimination committed by public officials and thus has as its primary emphasis the remediation of damages caused by discriminatory state action.   See generally, Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).   Yet the remaining components of the Act require no direct state action and are aimed specifically at extending the Fourteenth Amendment's equal protection mandate into the realm of private conduct that may or may not influence state action.   See generally, Patterson v. McLean Fed. Credit Union, 491 U.S. 164 (1989); United Brotherhood of Carpenters v. AFL-CIO, 463 U.S. 825 (1983); Runyon v McCrary, 427 US 160 (1960).   Allegations sufficient to support a cause of action under these statutes require assertions showing "(1) the plaintiff is a member of a racial minority; (2) the defendant's intent to discriminate on the basis of race; (3) discrimination concerning one or more of the activities enumerated in the statute."   Riley v. Transmaerica Ins. Group, 923 F.Supp. 882, 889 (1996).   Proof of a conspiracy under *§1985* require a further showing of an implicit or explicit agreement to commit the discriminatory actions.   Odlan has carried its burden of alleging facts supporting both claims.

        1.   The GDA's primary argument is that Odlan's amendment is insufficient because it covers claims already dismissed in

facts available to it, and thus the GDA's motion to dismiss is insufficient

this Court's prior orders.  Yet the Court's previous Order was granted prior to the time the GDA ever became part of this suit and thus cannot serve as the basis for any adjudication of claims against the GDA.  Furthermore, as noted above in respect to the claims of the GDA, the Court's previous opinion did not find under the exacting *Conley* standard that Odlan could not state a series of facts under which it could hold those responsible liable for violating its civil rights.  *Rule 15* of the *Federal Rules of Civil Procedure* states that "shall be freely given when justice so requires" in order to flesh out allegations and render them sufficient to state a cause of action.  *F.R.C.P. 15(a)*.  Consequently, the Court should now look at the instant *First Supplemental and Amending Complaint* and determine *vel non* whether the amended allegations state a cause of action against the GDA for violating *the Civil Rights Act*.

2.  Odlan has fulfilled all three of the elements of pleading required for a cause of action under *§1981*. Odlan is a minority-owned business and is thus within a protected minority group.  *See, e.g., Rosales v. AT & T Info. Sys., Inc.*, 702 F.Supp. 1489 (D.Colo. 1988).  Odlan's allegations have further shown strong circumstantial evidence of discriminatory intent on the part of the GDA.  *Compare, Compare, Arlington Heights v.*

as a matter of law.

19

*Met. Housing Dev. Corp.*, 429 U.S. 252 (1977); *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994)("the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.")  It has indicated the events claimed to constitute discrimination—the denial of its requested map change and the subsequent inability to develop its property in the Garden District.  Odlan has further shown compelling circumstances giving rise to an inference of discrimination—the prevailing lack of minority businesses in the surrounding area, the propagation of non-minority businesses in the area, and the GDA's opposition to the former coupled with its embracing of the latter.[2]  Finally, to the extent that these activities were all designed to prevent Odlan from owning a business in the Garden District—something alleged in Paragraph XXXIV—they constitute the classic deprivation of Odlan's ability to share equally in "the making,

---

[2]  Once Odlan has alleged circumstantial evidence giving rise to an inference of discrimination, it need not provide any direct allegations of intent on the part of the GDA.  The Federal Rules specifically state that "malice, intent, knowledge, and other condition of mind of a person may be averred generally."  F.R.C.P. 9(b).  It would be absurd to impose a duty on Odlan to provide specific evidence of intent and allegations of intent at the outset of the case when all of the facts supporting specific intent rest with the defendants.  Discovery will fill in those details.  At present, Odlan's general allegations of intent bolster his circumstantial evidence of discriminatory effect and are sufficient to state a cause of action.

performance, modification, and termination of contracts" and are thus violative of *42 U.S.C. §1981*.[3]

These allegations are more than enough to state a cause of action against the GDA for violating *42 U.S.C. §1981*. The allegations state that all commercial structures in the area surrounding the building owned by Odlan are owned by non-minority proprietors. *See, First Supplemental and Amending Complaint* at §X-XII. In addition, they lay out the specific history of Odlan's fight for its license against the forces of the GDA and the GDA's refusal to accept the fact that Odlan desired to open a coffee shop in that area. *Id.* at §XVI(and all alphabetical subparts). Finally, Odlan indicates that—unlike the non-minority businesses in its area—the GDA opposed Odlan's efforts to further develop a traditionally commercial property in the Garden District. *Id.* at XXIIX-XXXV. These allegations provide strong indicia of a refusal on the part of the GDA to treat Odlan's attempted development of 2800 St. Charles fairly on account of the race of its owner.

---

[3] The allegations further support a violation of 42 U.S.C. §1982's mandate that "all citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. §1981. The Supreme Court has held that the two statutes overlap and contain the same substantive elements. *See generally, Tillman v. Wheaton-Haven Rec. Ass'n.,* 410 U.S. 431, 439-440 (1973). This is particularly true where, as here, the underlying discrimination stems from the inability of Odlan to develop its property as it would be were it not minority-owned.

Having alleged discrimination, shown discriminatory effect and alleged discriminatory intent, Odlan has stated a cause of action under *42 U.S.C. §1981*.

4.    Odlan has further stated a cause of action for conspiracy to violate its civil rights under Section 1985. Because Section 1985 simply borrows from the other statutes in terms of the types of rights it protects, and makes it illegal for two or more people to conspire in violation of those rights, the underlying substantive elements of the *§1985* violation are co-terminus with those of the *§1981* and *§1982* violations.    The only added elements are requisite allegations showing "actions taken in concert by the defendants with the specific intent to violate the aforementioned right."    *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999).    *See also*, *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996).    Odlan has made allegations sufficient to fulfill these requirements.

It is clear that the players, the objective and the fulfillment of that objective have been identified in this matter.    The City and the GDA are the two conspirators, the objective was to deprive Odlan of its ability to open a coffee shop in the Garden District because its owner was black, and the CPC and City Council's denial of the map change fulfilled that objective.    At the heart of the GDA's attack on the conspiracy count is the notion that, although the objective was fulfilled,

it need not have been done in a way that implied an agreement between the City and the GDA to do so. It is thus the existence of the agreement that the GDA finds lacking in this conspiracy.

Yet that agreement is amply supplied by the series of allegations concerning the City Council's conduct in the hearing on Odlan's map change. Odlan alleges that the CPC rejected its own Staff Report and denied the Map Change. Odlan further alleges that, when the matter came up before the City Council, the City Council waived response to the appeal of Odlan by the GDA and instead summarily affirmed the CPC decision. There thus exists a permissible and plausible inference that the City Council had a pre-conceived notion of how it would vote on the amendment and thus voted without full argument on the issue. That is sufficient to show that some form of pre-arrangement likely existed between the City Council and the most violent and vocal opponent to the map change—the GDA. Under these circumstances, the conspiracy count should stand.

**CONCLUSION**

For the foregoing reasons, Odlan Holdings, L.L.C. respectfully moves this Court to reconsider its Order of February 15, 2001 and to deny the Garden District Association's *Motion to Dismiss.*

23

Respectfully submitted,

**TAGGART, MORTON, OGDEN, STAUB
ROUGELOT & O'BRIEN, LLC**

By: _____
Charlton B. Ogden III, Bar No.10169
James R. Morton, Bar No. 9755
Michael W. Hill, Bar No. 25415
2100 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 599-8500

    -and-

**THE ECKSTEIN LAW FIRM**

Michael L. Eckstein, Bar No.5268
David C. Raphael, Jr., Bar No. 22853
1515 Poydras Street, Suite 2195
New Orleans, Louisiana 70112
Telephone: (504) 527-0701

**Attorneys for:
ODLAN HOLDINGS, L.L.C.**

## CERTIFICATE OF SERVICE

Undersigned counsel does hereby certify that he has served a copy of the foregoing pleading on opposing counsel this 16<u>th</u> day of <u>March</u>, 2001, by faxing and/or placing same in the United States mail, postage prepaid and properly addressed.

_____
Charlton B. Ogden III

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ODLAN HOLDINGS, L.L.C.       \*      CIVIL ACTION NO. 00-0352
                              \*

VERSUS                   \*      SECTION "J"
                              \*

CITY OF NEW ORLEANS        \*      MAGISTRATE 4

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF HEARING

    TO:  **CITY OF NEW ORLEANS, through counsel of record**
        Mr. Edward Washington
        Assistant City Attorney, City of New Orleans
        1300 Perdido Street
        New Orleans, Louisiana 70112

        **GARDEN DISTRICT ASSOCIATION, through counsel,**
        Mr. David Krebs
        Preaus, Roddy & Krebs
        650 Poydras Street, Suite 1650
        New Orleans, Louisiana 70130

    **PLEASE TAKE NOTE** that Odlan Holdings, L.L.C. will bring the foregoing *Motion to Reconsider* for hearing before the Honorable Judge Carl Barbier on the 11th ~~15th~~ day of April, 2001 at 9:30 ~~00~~ A.M., in the courtroom usually occupied by Judge Barbier in the courthouse of the United States District Court for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana 70130.

Respectfully submitted,

**TAGGART, MORTON, OGDEN, STAUB
ROUGELOT & O'BRIEN, LLC**


By: _Michael_ _W._ _Hill_ _____
Charlton B. Ogden III, Bar No.10169
James R. Morton, Bar No. 9755
Michael W. Hill, Bar No. 25415
2100 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 599-8500

        -and-

**THE ECKSTEIN LAW FIRM**

Michael L. Eckstein, Bar No.5268
David C. Raphael, Jr., Bar No. 22853
1515 Poydras Street, Suite 2195
New Orleans, Louisiana 70112
Telephone: (504) 527-0701

**Attorneys for:
ODLAN HOLDINGS, L.L.C.**

2

## CERTIFICATE OF SERVICE

Undersigned counsel does hereby certify that he has served a copy of the foregoing pleading on opposing counsel this _15th_ day of March, 2001, by faxing and/or placing same in the United States mail, postage prepaid and properly addressed.

_Michael W. Hill_
Michael W. Hill