FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 27  AM 10: 54

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
BARBIER, J.
MARCH 26, 2001

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ODLAN HOLDINGS, L.L.C. | CIVIL ACTION |
| VERSUS | NO: 00-352 |
| CITY OF NEW ORLEANS | SECTION: "J" (4) |

Before the Court are two motions:

(1) Defendant City of New Orleans's **Motion to Dismiss**. Rec. Doc. 9. Plaintiff Odlan Holdings, L.L.C. opposes the motion. Rec. Doc. 13.

(2) Defendant City of New Orleans's **Motion to Strike the First Supplemental, Amended and Restated Pleading of Plaintiff Odlan Holdings, L.L.C.** Rec. Doc. 17. Plaintiff Odlan Holdings, L.L.C. opposes the motion. Rec. Doc. 19.

The motions, set for hearing on February 14, 2001, are before the Court on briefs without oral argument. For the

DATE OF ENTRY
MAR 27 2001

following reasons, Defendant's motions are **GRANTED**.

## BACKGROUND

Plaintiff Odlan Holdings, L.L.C. ("Odlan") applied for a map change on September 14, 1999, to rezone Odlan's property from a residential district to a business district, in order to develop a Starbuck's coffee shop in the former Chopin Florist shop on St. Charles Avenue. The City Planning Commission ("CPC") staff recommended approval of the zoning change in its Staff Report dated October 22, 2000. On October 26, 1999, the CPC held a public hearing on Odlan's zoning request and heard from proponents and opponents of the map change. The CPC decided to deny Odlan's request for a zoning change.

On January 6, 2000, the New Orleans City Council ("the City Council"), after having an opportunity to review the proponents and opponents' comments in the Report and Recommendation from the CPC, held a public hearing to consider the CPC's recommendation to deny the zoning change. At the meeting, the City Council heard oral argument only from proponents of the zoning change because the opponents waived their right to oral argument at this meeting, relying on their previously filed written statements. The City Council voted to deny Odlan's request for a zoning change.

Odlan filed suit in this Court on February 3, 2000, alleging violations of the Fifth and Fourteenth amendments to the United States Constitution and violations of 42 U.S.C. § 1983. Odlan alleges that the City Council's denial of a zoning change for its property was "arbitrary, capricious, and a clear abuse of discretion," and a violation of its procedural and substantive due process and equal protection rights. This Court dismissed all of Odlan's claims with the exception of the procedural due process claim. <u>See</u> Rec. Doc. 7. Defendant City of New Orleans ("the City") then filed a Motion to Dismiss the remaining claim.[1] On November 6, 2000, Odlan filed a First Supplemental, Amending and Restated Complaint without leave of court, after which the City filed its Motion to Strike Odlan's First Supplemental, Amending, and Restated Complaint.

## DISCUSSION

### I. Motion for Summary Judgment

The City argues that it is entitled to dismissal of the claims against it because, as a matter of law, the waiver by Odlan's opponents of their right to speak at the City Council

---

[1] By order entered on January 16, 2001, the Motion to Dismiss was converted into a Motion for Summary Judgment and the Court allowed additional time to file memoranda and evidence.

hearing cannot constitute a denial of Odlan's right to due process, and the City's provision of a public hearing constituted due process beyond that which is required by state law.  See Rec. Doc. 9 at 3, 4.  Odlan advances three arguments in its Opposition to the motion, which are discussed in turn below.

**A.   Notice of the CPC hearing was inaccurate**

Odlan first argues that it was denied procedural due process because notice of the CPC hearing was inaccurate, because it stated that the CPC would be considering a requested map change from an RM-2A (Multiple-Family Residential District) classification to a B-1A (Neighborhood Business District) classification when, in fact, the CPC decided four days prior to the hearing to convert the request into an alternative change to either a B1-A or a RO-1 (General Office District).  Odlan contends that because the RO-1 classification was less controversial and the notices failed to include the alternative classification, only members of the public opposing the B-1A were present at the CPC hearing and members of the public who would support the change to a R0-1 classification were not aware of the possibility of this zoning change.

The strongest construction of this argument is that had the possibility of an alternate, less controversial RO-1

4

classification been noticed, perhaps more proponents of a change to the R0-1 classification would have attended the hearing; however, members of the public who had adequate notice of the proposed change to the B-1A were present at the CPC hearing and were informed at the hearing that a change to R0-1 was also under consideration.  Thus, these attendees had an opportunity to take a position on the proposed change to a R0-1 classification.  The CPC Staff Report contains notes from the public hearing which reveal that opponents of the change to B-1A did, in fact, address the proposed change to R0-1.  Rec. Doc. 23 Ex. D at 9.  Further, Odlan has not presented any evidence of prejudice or an affidavit of even a single person who would have attended the hearing to support the change to the R0-1 classification had the notice of the hearing been accurate.  As well, if Odlan's members believed the notice was a problem, they could have asked for a continuance of the CPC hearing to allow for time to re-notice or to have the record held open; however, they did not.

In support of its argument, Odlan refers to a letter sent by Mr. Lloyd N. Shields, attorney for the Garden District Association ("GDA"), to the CPC in which Mr. Shields suggests that the CPC hearing should be readvertised to avoid acting contrary to constitutional due process considerations.  <u>See</u> Rec.

Doc. 23 Letter from Shields to Robinson of 10/25/99, at Ex. E. This letter, however, should be evaluated in context. The GDA opposed Odlan's request for a zoning change, and Mr. Shields, representing the GDA, was alerting the CPC of potential constitutional due process violations in the event the CPC <u>granted</u> the request for a zoning change to R0-1. The CPC ultimately denied Odlan's request, and as discussed above, Odlan has failed to present any concrete evidence of prejudice caused by failure to readvertise the hearing. Further, members of the public did address the change to R0-1 at the hearing. Thus, the failure of the CPC hearing notice to alert members of the public to an alternative zoning change to either B-1A or R0-1 does not amount to a violation of procedural due process.

**B.   Notice of the City Council hearing was insufficient**

Odlan's second argument is that notice of the City Council hearing was insufficient because no signs were posted around the property that was the subject of the request for a zoning change.

As exhibits to its Reply Memorandum, the City has provided copies of the zoning notice; a map indicating where the notice was to be posted; and the affidavit of the individual charged with posting the notices, attesting that he posted the signs in advance of the hearing date. As well, the City Planning

Commission mailed 28 notice letters to nearby property owners.

Moreover, as the City points out in its converted Motion for Summary Judgment, the City's provision of a public hearing constituted due process beyond that which is required by state law. Rec. Doc. 9 at 4. Further, Odlan concedes that "a violation of the City's own rules concerning zoning notices would not *per se* give rise to a constitutional violation." Rec. Doc. 23 at 6. Odlan asserts that such a violation "would give rise to a state law claim for violation of the state statute ...;" however, no state law claim is properly before this Court.[2] Id. Thus, failure to post notices around the property, if that did in fact occur, would not give rise to a procedural due process violation.

C. **Departure from customary procedure at the City Council hearing**

Odlan's final argument is that the process employed at the City Council hearing violated procedural due process because the City Council departed from its customary procedure when the hearing concluded without oral argument by the **opposition** to the zoning change and rebuttal.[3] Essentially, Odlan asks this Court

---

[2] The only remaining cause of action before this Court is Plaintiff's procedural due process claim. See Rec. Doc. 7.

[3] The opponents of the proposed zoning change waived their right to oral argument at the City Council meeting. Rec. Doc. 23

to conclude that because the City Council heard only Odlan's arguments and did not hear the **opponents'** arguments or the rebuttal, Odlan was deprived of a fair adjudication of its request. This argument borders on the absurd. In addition to the fact that the City's provision of a public hearing constituted due process beyond that which is required by state law, the City Council reviewed both the proponents' and the opponents' comments in the Report and Recommendation from the CPC prior to the hearing. Thus, under these facts, the City's departure from the customary procedure, by failing to hear an oral presentation by the **opponents** of the zoning change, does not amount to a violation of the procedural due process of the proponents of the zoning change.

II. **Motion to Strike the First Supplemental, Amended and Restated Pleading of Plaintiff Odlan Holdings, L.L.C.**

The City has moved to strike Odlan's First Supplemental, Amending and Restated Complaint ("First Supplemental Complaint"), arguing that the City's first Motion to Dismiss constituted a responsive pleading terminating Odlan's right to amend or, in the alternative, that this Court's order dismissing all but Odlan's procedural due process claim constituted an order or final

---

at 15.

judgment terminating Odlan's right to amend.

Odlan's First Supplemental Complaint attempts to add a claim under the Civil Rights Act of 1965 and 1991 as follows: "Upon information and belief, the Garden District, with its disparate attitude towards the minority-owned Odlan, manipulated and coerced the CPC and the City Council to deny the minority-owned Odlan's request for a Map Change differently from its treatment of other non-minority owned businesses in the Garden District." First Supplemental, Amending, and Restated Complaint, ¶ XXXIV. Odlan argues that "the enforcement of a racist private policy by a governmental entity constitutes state action violative of the Civil Rights Act and the Equal Protection Clause." Rec. Doc. 16 at 5. In support of its claim, Odlan alleges that "other non-minority owned businesses have sought and obtained zoning variances and other permits allowing them to intensify their commercial operations in the area with no objections from the GDA." First Supplemental, Amending, and Restated Complaint at ¶ XXIX. Odlan further alleges that "[o]n information and belief, when non-minority owned businesses attempted to acquire the Property on previous occasions, the GDA had voiced no opposition to the use of the Property to house a commercial establishment." Id. at ¶ XXXI.

These facts are not sufficient to support a claim that the City applied the statute unequally based on race. The only claim levied against the City is that the GDA "manipulated and coerced the CPC and the City Council to deny the minority-owned Odlan's request ...." This claim amounts to a conclusory statement insufficient to withstand a motion to dismiss. The facts cited in support of Odlan's claim arise from alleged conduct by the GDA, not the City. Odlan argues that the City can be held liable under the Civil Rights Act if it enforced a policy of racial discrimination by a private actor. See Rec. Doc. 16 at 5. This Court can find no authority (and none is cited to the Court) holding a governmental entity liable under the Civil Rights Act due to "manipulation" or "coercion" by a private entity. The Court notes that conspiracy between the state and private actors could be sufficient to find liability under the Act; however, a claimant must allege facts that suggest: (1) an agreement between the private and public defendants to commit an illegal act, and (2) an actual deprivation of constitutional rights. See Cinel v. Connick, 15 F.3d 1338 (5th Cir. 1994). The claims alleged in Odlan's First Supplemental Complaint present conclusory statements and fail to allege facts sufficient to find liability under the Civil Rights Act. If allowed, the claims would be

subject to dismissal.

The Court recognizes the policy favoring the granting of leave to amend and that leave to amend "shall be freely given when justice so requires." However, in the present case, denying the motion to strike would be futile as Odlan's First Supplemental Complaint does not cure the deficiencies of the original pleading and the amended complaint would not survive a Motion to Dismiss. Fed. Rule Civ. Proc. 15(a). See also, Duda v. Board of Educ., 133 F.3d 1054, 1057 (7th Cir. 1998)(rejecting an amendment filed before receipt of a responsive pleading for failure to cure deficiencies of the original pleading). Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 9)**, converted to a Motion for Summary Judgment, filed by Defendant City of New Orleans should be and is hereby **GRANTED**, plaintiff's claims against the City of New Orleans are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that the **Motion to Strike the First Supplemental, Amending and Restated Pleading of Plaintiff Odlan Holdings, L.L.C.** filed by Defendant City of New Orleans should be and is hereby **GRANTED**.

\* \* \* \* \* \* \* \* \* \* \* \*